Plaintiff, Clinton Books, Inc., and Intervening Plaintiff, Fantasy Warehouse, Inc., by and through counsel, have filed a petition to rehear the opinion of this Court filed on April, 25, 2006. Upon due consideration, the petition is DENIED.

Kenneth L. HURST, et al.

v.

LABOR READY.

Supreme Court of Tennessee,
at Knoxville.

May 5, 2006 Session at Chattanooga.[1]

July 7, 2006.

1. Oral argument in this case was heard May 5, 2006, in Chattanooga, Hamilton County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

Gerald C. Wigger, Nashville, Tennessee, for the Appellant, Labor Ready.

James S. MacDonald, Knoxville, Tennessee, for the Appellee, Kenneth L. Hurst, deceased, by next friend, Crystal E. Cummings, for the use and benefit of decedent's two minor sons.

## OPINION

E. RILEY ANDERSON, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

We accepted this appeal prior to its review by the Special Workers' Compensation Appeals Panel to determine whether the evidence preponderates against the trial court's finding that the employee's death arose out of and in the course of his employment. The employee, a day laborer for a temporary labor business, was shot to death outside his employer's office while he was waiting to be paid. After reviewing the record and applicable authority, we conclude that the evidence does not preponderate against the trial court's findings. Accordingly, we affirm the trial court's judgment.

### Background

The employee, Kenneth Hurst, was shot to death outside of his employer's office on Magnolia Avenue in Knoxville, Tennessee. At the time of the shooting, Hurst, age twenty-seven, was waiting to be paid for his work as a laborer for Labor Ready, a company that provides temporary employees to other businesses. A claim for workers' compensation benefits was filed "by next friend" on behalf of Hurst's two minor children, alleging that the death arose out of and in the course of his employment. The evidence from the trial is summarized below.

On March 3, 2004, Hurst and seven other Labor Ready workers were assigned to work as laborers at a construction project at the Doubletree Hotel in Oak Ridge, Tennessee. According to Glenn Hanley, a Labor Ready employee, he had returned to Labor Ready from another job to collect his paycheck at approximately 5:20 p.m. Hanley indicated that it was possible to be paid before the job ticket arrived, but it was not the regular procedure. He presented his job ticket, collected his check, cashed it at a tobacco store next door, and came back outside. At that time, Hanley testified that Hurst and another Labor Ready employee, Lee Sutton, had arrived and were standing outside the double doors of Labor Ready's office waiting to get paid. A red truck then pulled up and parked in front of Labor Ready's office. A

woman passenger got out of the truck, entered the tobacco store and Labor Ready's office, and asked to use the bathroom. Labor Ready's manager refused in accordance with its policy and a posted sign indicating that there was no public restroom.

According to Hanley, as the woman exited Labor Ready's office, she became agitated and started cursing because she was denied permission to use the restroom. Hanley said that Sutton suggested the woman "relieve herself" in the alley, and the truck driver, Bruce Phillips, started "screaming at them to mind their own f-ing business." After the woman got back in the truck, Phillips drove across the parking lot and started to pull out onto Magnolia Avenue, but he suddenly spun his tires, reversed the truck, and jumped out of the truck screaming. He confronted Hurst and Sutton, who were directly in front of Labor Ready's office. Phillips said, "Do you have a f—king problem with me," and Hurst replied, "No, but we can make one." At that point, according to Hanley, Phillips "came at" Hurst, and Hurst hit him with his fist. Phillips then pulled a gun and shot Hurst.

Darlene Whittenmire, a Labor Ready employee, testified to a very different version of events. She stated that Labor Ready was located in an area commonly known for drug transactions and prostitution. She said that she was standing near the tobacco store about forty feet away when she heard Hurst "smart off" to a woman by calling her a "crack-ho." She said that the truck driver, Phillips, told Hurst "to mind his own f—ing business." At that point,

> [Hurst] hollered [an epithet] back at him. And then that's when [Phillips] told the girl to get in the truck and they spun off and they was going out of the driveway, so I thought, and he

backed up and got out of the truck and shot [Hurst].

Whittenmire conceded on cross-examination that she did not use the phrase "crack-ho" in her pretrial deposition and also admitted that she had testified in the deposition that she did not hear what was said between Hurst and Phillips before the shooting. She also testified she could not hear what the woman said, although the woman was closer to her than Hurst.

Arthur Davis, an assistant manager with Labor Ready, testified that employees are assigned to temporary jobs and are paid at the end of the day when they present written confirmation (a "ticket") that they performed the assigned work. When a group of employees are assigned to the same project, the employer may use one ticket for the entire group. Employees who return to the office before their job ticket arrives may be paid if Labor Ready calls the job site to confirm the employee worked on that day. Two workers in Hurst's job crew, for instance, were paid before the job ticket arrived. Davis conceded that employees commonly gathered outside of Labor Ready's office while waiting to be paid at the end of the day, and it was not uncommon for fifty to sixty employees to gather to be paid at the end of the day between 4:00 and 6:00 p.m. Davis testified that 95% to 98% of the employees get paid daily.

Davis testified that on March 3, 2004, at the end of the day, a woman asked to use the Labor Ready bathroom while workers were awaiting payment. He declined because company policy prohibited the public use of the bathroom. Davis said that he then heard a pop and saw Hurst fall in front of the office. Someone jerked open the door and said, "Call 911, he's been shot."

Crystal Cummings testified she was a former day worker on a number of occa-

sions at Labor Ready and that a job ticket had to be turned in before a worker got paid. She was unaware of any procedure where payment could be received without the job ticket.

Following the trial, the trial court found that Hurst's death arose out of and in the course of employment. The trial court found that Hurst was properly on Labor Ready's premises waiting to be paid when the shooting occurred and that Hurst had been targeted by Phillips due to his association with Labor Ready, whose manager had denied permission for his companion to use the restroom. The trial court specifically found that Hurst did not make "vile comments" or otherwise provoke Phillips.[2] Labor Ready filed a notice of appeal.

We granted full Court review prior to consideration of the appeal by the Special Workers' Compensation Appeals Panel.

### Analysis

On appeal, Labor Ready argues that the evidence preponderates against the trial court's finding that Hurst's death arose out of and in the course of his employment, a prerequisite for recovery under Tennessee Code Annotated section 50–6–102(13) (2005). Labor Ready insists that Hurst was "loitering" and not working at the time of the shooting, that he was not "on the clock" or furthering his employer's interests, and that the shooting was unrelated to his employment. Hurst responds that the evidence in the record does not preponderate against the trial court's findings.

■ Our standard of review of factual issues in a workers' compensation case is de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2) (2005); *see also Houser v. Bi–Lo, Inc.,* 36 S.W.3d 68, 70–71 (Tenn.2001). When the trial court has seen the witnesses and heard the testimony, especially where issues of credibility and the weight of testimony are involved, the appellate court must extend considerable deference to the trial court's factual findings. *Houser,* 36 S.W.3d at 71.

■ To be compensable under the Workers' Compensation Law, an injury must "aris[e] out of and in the course of employment." Tenn.Code Ann. § 50–6–102(13) (2005). "In Tennessee, as in most jurisdictions, the statutory requirements that the injury arise out of and occur in the course of the employment are not synonymous, although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys., LLS,* 164 S.W.3d 350, 354 (Tenn.2005). We discuss each requirement in turn.

### Arises Out of Employment

■ An injury "arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Id.* (citing *Fritts v. Safety Nat'l Cas. Corp.,* 163 S.W.3d 673, 678 (Tenn.2005)). The injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work. *Id.* An injury that is " 'purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered as arising out of the employment.' " *Id.* (citations omitted).

---

**2.** The trial court gave little weight to Whittenmire's testimony after noting that she testified in a deposition that she did not hear what was said between Hurst and Phillips.

We have analyzed the "arising out of" or "causation" factor in several categories of cases involving assaults on employees. *See Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d 768, 771–72 (Tenn.1998). First, assaults with an "inherent connection" to the employment "arise out of" employment and are compensable. *Id.* at 771; *see also W.S. Dickey Mfg. Co. v. Moore*, 208 Tenn. 576, 347 S.W.2d 493 (1961) (injuries resulting from a dispute about job performance were compensable). Second, assaults stemming from "inherently private" disputes that are brought to the workplace generally do not "arise out of" employment and are not compensable. *Id.; see also Brimhall v. Home Ins. Co.*, 694 S.W.2d 931 (Tenn. 1985) (injuries resulting from a dispute over the use of personal items were not compensable). Finally, assaults resulting from a "neutral force," such as a random violent act, may "arise out of" employment depending on the circumstances and thus, may be compensable. *Id.* at 771–72; *see also Beck v. State*, 779 S.W.2d 367 (Tenn. 1989) (injuries suffered from a random assault by a third party were compensable where the employment necessarily exposed the employee to public risks).

In *Braden v. Sears, Roebuck and Co.*, 833 S.W.2d 496, 499 (Tenn.1992), this Court emphasized that "[a]n employee need only show that an assault has a rational, causal connection to the employment in order to establish the injury arose out of employment." Moreover, we approved the so-called "street risk" doctrine that allows an employee to prove causation where the employment "exposes an employee to the hazards of the street...." *Id.* at 498; *see also Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597, 599 (Tenn.1979) (shooting of truck driver arose

out of employment even though the employee was on his lunch break). We explained:

> To establish this casual connection, workers whose employment exposes them to the hazards of the street, *or who are assaulted under circumstances that fairly suggest they were singled out for attack because of their association with their employer, are entitled to establish this causal connection with the aid of the street risk doctrine.*

*Braden*, 833 S.W.2d at 499 (emphasis added). In applying these principles, we held that an employee's injuries were compensable where the proof established that he was assaulted partly "because of his association with" the employer. *Id.; see also Bell v. Kelso Oil Co.*, 597 S.W.2d 731 (Tenn.1980) (employee assaulted because he worked for a specific company).

Although the present case does not fit neatly into one of the three categories of "assault" cases, we conclude that the evidence does not preponderate against the trial court's finding that Hurst's death arose out of his employment. As the trial court found, the shooting was related to Hurst's employment; indeed, he was outside Labor Ready's office waiting to get paid in accordance with Labor Ready's payment procedure when the shooting occurred. There is no evidence that Hurst was simply loitering or that the incident was unrelated to his employment. Similarly, the evidence shows that the altercation did not stem from an "inherently private" dispute; to the contrary, after carefully weighing the credibility of the witnesses, the trial court found that Hurst did not make any inciting comments or take any actions that provoked the shooting.[3] Finally, the trial

**3.** Moreover, the trial court properly observed that Hurst's degree of fault, if any, in causing the incident, did not preclude his claim.

*Woods*, 967 S.W.2d at 771–72 (rejecting application of the "first-aggressor" analysis).

court, citing the "street-risk" doctrine, found that the shooting "stemmed from" Labor Ready's enforcement of its restroom policy and Hurst's association with Labor Ready. Although Hurst was not wearing a uniform or clothing identifying him as a Labor Ready worker, the evidence supports the trial court's finding that Hurst was identifiable as a Labor Ready employee because he was standing directly in front of Labor Ready's office with other Labor Ready workers while waiting to be paid. Our deferential review of the trial court's factual findings, particularly those based on an assessment of the witnesses' credibility, leads to the conclusion that the evidence does not preponderate against the trial court's findings in this case.

### In the Course of Employment

An injury occurs in the course of employment if "it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto." *Blankenship*, 164 S.W.3d at 354 (quotation and citation omitted). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury suffered by the employee. *Id.*

After our review, we conclude that the evidence in the record does not preponderate against the trial court's finding that Hurst's death occurred in the course of his employment with Labor Ready. Hurst had returned to Labor Ready at the end of the work day to receive his paycheck for that day's work. He was waiting just outside the office for other employees who had not yet arrived with the "ticket" confirming that the group had completed their work in Oak Ridge. Although it was possible for workers to get paid without a ticket if the completion of their work was

confirmed by a management telephone call, the evidence established that it was common procedure for workers to gather outside of the Labor Ready office while waiting for the group ticket to arrive so that they could receive their paychecks. In short, the evidence does not preponderate against a finding that the shooting occurred while Hurst was within the time and place of his employment and while he was following Labor Ready's procedures for collecting his paycheck.

### Conclusion

After reviewing the record and applicable authority, we conclude that the evidence does not preponderate against the trial court's findings that the employee's death arose out of and in the course of his employment. Accordingly, we affirm the trial court's judgment. Costs of the appeal are taxed to the appellant, Labor Ready, and its sureties, for which execution shall issue if necessary.