Patricia M. BRYANT

v.

**BAPTIST HEALTH SYSTEM HOME CARE OF EAST TENNESSEE.**

Supreme Court of Tennessee,
at Knoxville.

Sept. 6, 2006 Session.

Dec. 21, 2006.

**744**

Reuben N. Pelot, IV, Knoxville, Tennessee, for the Appellant, Baptist Health System Home Care of East Tennessee.

J. Anthony Farmer, Knoxville, Tennessee, for the Appellee, Patricia M. Bryant.

**OPINION**

E. RILEY ANDERSON, Sp.J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER, CORNELIA A. CLARK, and GARY R. WADE, JJ., joined.

We transferred this case for review by the full Supreme Court prior to review by the Special Workers' Compensation Appeals Panel primarily to determine whether the trial court erred in dismissing the employer's counterclaim based upon the trial court's conclusion that the employee's false deposition testimony is not a "fraudulent insurance act" as that term is defined by the Workers' Compensation Fraud Act, Tennessee Code Annotated sections 56–47–101 to –112 (2000). The employer also argues that the trial court erred in awarding the employee benefits because the expert proof of permanency is insufficient and that the trial court's award of permanent partial disability benefits is excessive. After reviewing the record and applicable authority, we conclude that the trial court properly dismissed the employer's counterclaim and that the evidence does not pre-

ponderate against the trial court's award of 22.5% permanent partial disability benefits. We therefore affirm the judgment of the trial court.

## I. BACKGROUND

In August 1994, Patricia M. Bryant ("Bryant") began working as a home-health nursing assistant for Baptist Health System Home Care of East Tennessee ("Baptist"). She visited seven or eight homes per day and performed various tasks for each patient, including bathing patients, assisting patients with other personal hygiene needs, changing bed linens, and cleaning patients' personal areas.

On a Thursday in early May 1997, Bryant injured her back while at work as she helped a patient move from his bed into his chair. Bryant reported that she experienced severe pain in her back and hips and was unable to lift her right leg. She immediately reported the incident to her supervisor, who asked her to continue working, and despite the severe pain, Bryant finished her work that day.

The weekend after the incident Bryant went to St. Mary's Hospital emergency room complaining of back pain and had an x-ray of her back. On Monday, she visited her primary care physician, Dr. David Goldman. He examined her, treated her conservatively, and directed her to take off work for two weeks due to the injury.

Bryant returned to work in early June 1997. On the first day of her return, she re-injured her back as she helped a patient stand and step out of the bathtub. Bryant met with her supervisor later that day, informed her supervisor of the injury, and explained that she could not do the work. She was then sent to Baptist to fill out

another incident report. After she had completed the report, someone named Mr. Ensworth told her to leave, insisting that this was the same injury, that she had not injured herself, and that she should see her own doctor.

She returned to Dr. Goldman, her personal physician, who treated her and then referred her in July of 1997 to Dr. Joe Beals, a neurosurgeon, who examined her and treated her conservatively by ordering medication, physical therapy, and a caudal block. Bryant did not return to work, and Baptist refused to pay her medical expenses.

In September 1997, Bryant applied for relief to the Tennessee Department of Labor. A representative of the Department found that the

> [e]mployee sustained two injuries and was denied medical treatment after second exacerbation. Employee was not given a panel of physicians. Employer told Employee to go to Employee's own doctor. Employee was referred to Dr. Joe Beals, by Employee's doctor, before a panel of physicians was given to Employee. Dr. Joe Beals is the treating physician.

Retroactive payment of temporary total benefits of $3,546.92 was ordered from the date of disability, May 13, 1997, to September 22, 1997. Future temporary total benefits to the date of maximum medical improvement [1] and medical expenses were ordered to be paid.

After the Department of Labor ordered that a panel of physicians be furnished by the employer, Bryant was sent by the employer to see Dr. Killiffer, Dr. Kay, and Dr. Joseph Ragland.

---

1. The date of maximum medical improvement was December 16, 1997, as established by Dr. Ragland.

In September 1997, Bryant saw Dr. Joseph Ragland, a neurosurgeon, who said Bryant was complaining of back, left hip, and leg pain. According to Dr. Ragland, Bryant had earlier been treated by Dr. Goldman and Dr. Beals with pain medication, anti-inflammatories, muscle relaxants, physical therapy, and a caudal block. According to Dr. Ragland, Bryant appeared to be in some discomfort and had slight tenderness in the back on palpation. An MRI showed significant degenerative disease at multiple levels of the back and lumbar stenosis, which is a narrowing of the nerve canal at the center of the spine. Dr. Ragland's impression was lumbar strain with superimposed radicular syndrome with left leg symptoms. He ordered additional caudal blocks.

Bryant next saw Dr. Ragland on October 2, 1997. He thought she had improved and in late October 1997, Dr. Ragland released her with restrictions to return to light-duty work at Baptist, which consisted of administrative duties, primarily filing, at Baptist's home health care department. Bryant worked four hours per day for the first two weeks after her return, and thereafter she worked eight hours per day until the end of December 1997, when she left Baptist's employment. Bryant explained to Baptist that she was physically unable to continue because the filing involved heavy lifting and bending. She said Baptist's personnel department told her that no other jobs were available to accommodate her physical limitations. After she left, Bryant filed an action for workers' compensation benefits.

On December 18, 1998, Baptist deposed Bryant. Bryant testified in response to several questions that she had not worked anywhere since leaving Baptist in December of 1997, and that she had not worked

as a private home health care assistant. Following this December 18, 1998 deposition, the Tennessee Department of Labor advised Baptist that it had received an anonymous telephone "tip" about Bryant. As a result of this information, Baptist hired a private investigator who discovered that Bryant had worked since leaving Baptist. Baptist then filed a counterclaim against Bryant under the Workers' Compensation Fraud Act ("Fraud Act"). *See* Tenn.Code Ann. §§ 56–47–101 to –112 (2000).

During another deposition of Bryant in November of 2001, Baptist showed her copies of checks she had received for work performed from August 1998 through March 1999. Bryant frankly admitted that she had not responded truthfully to questions posed during her December 18, 1998 deposition and that she had been working for more than four months at the time of her December 1998 deposition. She said that she had worked on occasion for nearly sixty hours per week as a "sitter" for three different patients, earning more money some weeks than she had earned while working for Baptist. However, Bryant maintained that the duties of a sitter and the duties of a home-health nursing assistant differ greatly. According to Bryant, her work as a sitter did not require her to lift or bathe patients. Bryant also explained that as a sitter, she often worked at night when her duties were limited to testing the patients' blood-sugar levels, preparing snacks for patients, and sleeping on a sofa near patients' hospital beds.

This workers' compensation case was finally tried in December 2002, more than four and one-half years after the initial injury and four years after maximum medical improvement.[2] The only witnesses at

---

**2.** We note that Tennessee Code Annotated section 50–6–225(f)(1) (1999) requires that workers' compensation cases be expedited by

trial were the plaintiff Bryant; her mother, who corroborated her claims of pain and disability; Dr. Ragland by deposition; and Teresa Carden, a claims adjuster for the defendant Baptist.

Bryant, in her direct testimony, confirmed that from the date she first saw her primary physician in early May 1997 for her work-related injury until late October of 1997, she was unable to work except for one day and was not paid medical expenses or disability benefits until the Department of Labor intervened. She was then returned to work in late October of 1997 by Dr. Ragland on light duty with restrictions but quit in late December of 1997 because she was physically unable to continue.

When asked at trial why she had answered questions untruthfully at her December 18, 1998 deposition, Bryant stated:

Well, I just didn't feel like that I could tell him the truth because of—you know, I thought it would hurt me, and I wasn't drawing any money from them [Baptist], and I had to have something to live on, and I just felt like that—you know, I was scared to tell him the truth.

Bryant pointed out that she had answered truthfully at her second deposition and at trial. Bryant testified that she continues to experience back pain from the 1997 work-related injury and that the pain disrupts her sleep, precludes her from standing for long periods of time, prevents her from doing housework and other tasks and activities she previously had no difficulty performing, and limits her ability to walk as she had before the injury. Bryant also maintained that she is now unable to work in any of the other jobs she had previously held.

Bryant offered Dr. Ragland's deposition into evidence. Dr. Ragland opined that Bryant has significant degenerative changes in various areas of her spine; however, Dr. Ragland did not observe any anatomical change related to the May 1997 work-related injury. Dr. Ragland described Bryant's work-related injury as a soft tissue injury, specifically "lumbar strain with a superimposed radicular syndrome." Dr. Ragland opined that Bryant attained maximum medical improvement on the date of her last visit to him, December 16, 1997, and he assessed a 5% permanent impairment resulting from Bryant's work-related injury. Dr. Ragland imposed restrictions upon Bryant's physical activities, including a restriction against lifting more than seventeen pounds and restrictions against repetitive bending, stooping, reaching, or standing for lengthy periods of time. Dr. Ragland acknowledged that the permanent impairment and the physical restrictions were based upon Bryant's complaints of pain and that if Bryant had no pain, she would have no permanent disability or physical restrictions.

The defendant Baptist offered as its only witness a claims adjuster who handled the Baptist account and took the file over in 1999. Teresa Carden testified that $1,000 was paid to a private investigator to determine if Bryant had been working since December 1997. A different claims agency had handled the file prior to 1999, and Carden was unfamiliar personally with whether Baptist had offered Bryant a job consistent with the restrictions. Carden, however, produced from her claims file a report by a case manager, over objection, that indicated Baptist had offered jobs within Bryant's restrictions.

After considering the live lay testimony and the expert deposition testimony, the trial court ruled in favor of Bryant, awarding permanent partial disability benefits in the amount of 22.5%. The trial court did

giving the cases "priority over all cases on the trial and appellate dockets."

not, however, rule on Baptist's counterclaim under the Fraud Act. Baptist appealed, and on May 25, 2004, the Special Workers' Compensation Appeals Panel remanded the case to the trial court for entry of a final judgment on Baptist's counterclaim prior to hearing the merits of the appeal. *Bryant v. Baptist Health Sys. Home Care of E. Tenn.*, No. E2003–00432–WC–R3–CV, 2004 WL 1157543 at *2 (Tenn.Workers Comp.Panel May 25, 2004).

On June 14, 2005, the trial court dismissed Baptist's counterclaim, finding that Baptist had not been prejudiced by the false information Bryant provided during her December 18, 1998 deposition and stating that Baptist had "failed to demonstrate by any evidence in the record that it either relied upon the deposition testimony of the Plaintiff in any way to its detriment or that it has been unable to pursue a full and complete defense of this claim because of Plaintiff's deposition testimony." The trial court ruled that Bryant's false deposition testimony was not a "fraudulent insurance act" within the meaning of Tennessee Code Annotated section 56–47–103. Baptist again appealed. This appeal was transferred to the full Court for hearing prior to Panel review. For the reasons explained hereinafter, we affirm the decision of the trial court.

## II. WORKER'S COMPENSATION FRAUD ACT

 The first and primary issue presented—whether the trial court erred in dismissing Baptist's counterclaim—requires us to construe a statute, i.e., Tennessee Code Annotated section 56–47–103(a), a provision of the Workers' Compensation Fraud Act. The construction of a statute is a question of law subject to de novo review with no presumption of correctness accorded the trial court's judgment. *Leab v. S & H Mining Co.*, 76 S.W.3d 344, 348 (Tenn.2002); *Bryant v. Genco Stamping & Mfg. Co.*, 33 S.W.3d 761, 765 (Tenn.2000). When construing a statute, this Court endeavors to ascertain and to give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn.2002); *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). This Court derives legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute" and avoids applying to the statute "any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn.2000). Where the words of a statute are clear and plain and fully express the legislative intent, courts enforce the statute as written. *State v. Johnson*, 79 S.W.3d 522, 526 (Tenn.2002).

Baptist's counterclaim is based on the Fraud Act and in particular, Tennessee Code Annotated section 56–47–103(a), which provides in relevant part as follows:

(a) Any person who, knowingly and with intent to defraud, and for the purpose of depriving another of property or for pecuniary gain, commits ... any of the following acts, has committed a fraudulent insurance act:

(1) Presents, causes to be presented or prepares with knowledge or belief that it will be presented, by or on behalf of a[ ] ... claimant ... to an *insurer* ... in connection with an *insurance transaction* any information which contains false representations as to any material fact, or which withholds or conceals a material fact concerning ...

(ii) A claim for payment or benefit pursuant to any insurance policy; ....

Tenn.Code Ann. § 56–47–103(a)(1)(ii) (2000) (emphasis added). "Insurance

transaction" is defined to include a transaction by, between or among an:

(A) *Insurer* or a person who acts on behalf of an insurer; and

(2) [a] ... claimant ... or any person who acts on behalf of any of the foregoing, for the purpose of obtaining insurance or reinsurance, calculating insurance premiums, submitting a claim, negotiating or adjusting a claim or otherwise obtaining insurance, self-insurance or reinsurance or *obtaining benefits thereof or therefrom.*

*Id.* § 56–47–102(5) (2000) (emphasis added).

The Fraud Act does not define the term "claimant"; however the Act defines "insurer" as

any person purporting to engage in the business of insurance or authorized to do business in the state or subject to regulation by the state, *who undertakes to indemnify another against loss, damage or liability arising from a contingent or unknown event related to causes arising under title 50, chapter 6.*

*Id.* at (6) (emphasis added).

Applying the familiar rules of construction to these statutory provisions, we conclude that the trial court did not err in dismissing Baptist's counterclaim. In our view, Baptist is not included within the Fraud Act definition of "insurer." Baptist is not "purporting to engage in the business of insurance." Moreover, although Baptist is self-insured for workers' compensation purposes and therefore subject to regulation by the state, Baptist has not undertaken "to indemnify *another* against loss, damage or liability arising from a contingent or unknown event related to causes arising under title 50, chapter 6." *Id.* (emphasis added).

Finally, as Bryant points out, the Fraud Act does not define "insurance transaction" to include the litigation of a workers' compensation claim. Rather, the definition of "insurance transaction" includes acts related to "obtaining insurance or reinsurance, calculating insurance premiums, submitting a claim, negotiating or adjusting a claim or otherwise obtaining insurance, self-insurance or reinsurance or obtaining benefits thereof or therefrom." *Id.* at (5). "A fundamental rule of statutory construction is that the mention of one subject in a statute means the exclusion of other subjects that are not mentioned." *Phillips v. Tenn. Technological Univ.*, 984 S.W.2d 217, 219 (Tenn.1998). Moreover, we do not apply to a statute "any forced or subtle construction which would extend or limit its meaning." *Nat'l Gas Distrib., Inc. v. State,* 804 S.W.2d 66, 67 (Tenn. 1991). Here, Baptist argues for a construction that would extend the meaning of the Fraud Act to a scenario that is not included within the plain language of the statute. We decline to adopt this construction and hold that the trial court did not err in dismissing Baptist's counterclaim.

### III. AWARD OF BENEFITS

We next consider Baptist's argument that the evidence preponderates against awarding Bryant workers' compensation benefits. Baptist maintains that the expert proof of permanent disability is unreliable because Dr. Ragland's medical impairment rating was based entirely on Bryant's subjective complaints of pain, which Baptist claims are not credible in light of her false deposition testimony. Alternatively, Baptist argues that the trial court's award of 22.5% was excessive in light of Dr. Ragland's 5% medical impairment rating.

The extent of an injured worker's permanent disability is a question of fact. *Lang v. Nissan N. Am., Inc.,* 170

S.W.3d 564, 569 (Tenn.2005). We review a trial court's determination of factual issues in a workers' compensation case de novo upon the record, with a presumption of correctness afforded the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2) (2005); *see also Hurst v. Labor Ready,* 197 S.W.3d 756, 760 (Tenn.2006). When the trial court has seen the witnesses and heard the testimony, especially where issues of credibility and the weight of testimony are involved, this Court must extend considerable deference to the trial court's factual findings. *Hurst,* 197 S.W.3d at 760; *see also Houser v. Bi–Lo, Inc.,* 36 S.W.3d 68, 71 (Tenn. 2001). However, when reviewing documentary evidence, such as expert medical testimony presented by deposition, this Court draws its own conclusions and does not defer to the trial court's judgment concerning the weight and credibility of the evidence. *Lang,* 170 S.W.3d at 569; *McIlvain v. Russell Stover Candies, Inc.,* 996 S.W.2d 179, 183 (Tenn.1999).

We have reviewed the record in this case with these principles in mind and have determined that the evidence does not preponderate against the trial court's finding of 22.5% permanent partial disability. Baptist is correct in its assertion that the medical impairment rating and physical limitations assigned by Dr. Ragland were based upon Bryant's complaints of pain. Nonetheless, by assigning a medical impairment rating and imposing physical limitations, Dr. Ragland credited Bryant's subjective complaints of pain.

More importantly, however, the trial court observed Bryant in the courtroom and heard her testify. The trial court was therefore in the best position to assess her credibility and to weigh her testimony. The trial court was well aware that Bryant had provided false deposition testimony concerning her employment status. Indeed, Bryant frankly admitted to doing so, but the trial court also heard Bryant's explanation for why she had answered untruthfully, her comparison of the work she performed as a sitter and the work she performed for Baptist, and Bryant's testimony concerning her continuing pain and her inability to work at any of the jobs she previously had held. In awarding benefits, the trial court stated that it had considered Bryant's "testimony as a whole" and found that she had presented "credible evidence in regard to the material issues in this matter, including her current industrial disability." The evidence in the record does not preponderate against the trial court's award to Bryant of 22.5% permanent partial disability benefits.

## IV. CONCLUSION

After considering the record, the arguments, and applicable authority, we conclude that the trial court did not err in dismissing Baptist's counterclaim and that the evidence does not preponderate against the trial court's award of 22.5% permanent partial disability benefits. Accordingly, we affirm the judgment of the trial court. Costs of appeal are taxed to the appellant, Baptist Health System Home Care of East Tennessee, and its surety, for which execution shall issue if necessary.