**FILED**

**September 5, 2017**

**TN COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**

**Time: 8:30 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT KNOXVILLE

| | |
|---|---|
| CAITLYN SEXTON,<br>　　　　Employee, | ) Docket No.: 2017-03-0186<br>) |
| v. | ) |
| BAD DADDY'S BURGER BAR,<br>　　　　Employer, | ) State File No.: 9646-2017<br>) |
| And | ) |
| GENERAL CASUALTY CO. OF<br>WISCONSIN,<br>　　　　Carrier. | ) Judge Lisa A. Lowe<br>)<br>) |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS
### (Decision on the Record)

---

This matter came before the undersigned Workers' Compensation Judge on Caitlyn Sexton's Request for Expedited Hearing seeking a decision on the record instead of convening an evidentiary hearing. The parties filed various motions and responses, and the Court issued an Order granting Bad Daddy's motion to file medical records. The most recent filings were Ms. Sexton's August 10 position statement and Bad Daddy's August 11 response.

This Court finds it needs no additional information to determine whether Ms. Sexton is likely to prevail at a hearing on the merits. Thus, under Tennessee Code Annotated section 50-6-239(d)(2) (2016) and Tennessee Compilation Rules and Regulations 0800-02-21-.14(1)(c) (2016), the Court decides this matter upon a review of the written materials.

The central legal issues are whether Ms. Sexton is likely to prevail at a hearing on the merits of establishing that her assault arose primarily out of and in the course and scope of her employment and her entitlement to reimbursement of medical expenses, authorized treatment with Dr. Glen Peterson, and attorney's fees. For the reasons set forth below, the Court holds Ms. Sexton came forward with sufficient evidence demonstrating she is likely to prevail at a hearing on the merits that her injury was work-

1

related. Therefore, this Court concludes Ms. Sexton is entitled to some but not all of the requested benefits.

## History of Claim

Ms. Sexton worked for Bad Daddy's as a bartender/server. On January 13, 2017, Ms. Sexton started her shift bartending when a female customer approached her requesting a private conversation. Ms. Sexton advised she was working and requested the customer leave the premises. She later learned that the customer was the girlfriend of a cook who worked at Bad Daddy's. Ms. Sexton never spoke with this customer before but saw her be rude to other Bad Daddy employees in the past. The customer allegedly followed Ms. Sexton throughout the restaurant and "harassed" her. Ms. Sexton reported the customer's strange behavior to her manager, but he was busy, and ultimately another server escorted the customer from the building. Sometime later, Ms. Sexton went outside to inform another server his assigned party was ready to be served. While outside, she took a smoke break before returning to close the bar. She alleged Bad Daddy's did not prohibit walking outside the restaurant for smoke breaks. Ms. Sexton stated that while she was outside, the customer attacked her, resulting in severe contusions and a portion of her hair ripped out. The attack lasted approximately ten minutes.

Ms. Sexton reported the attack to her supervisor and called 911. The Knox County Sheriff's Office investigated the attack.[1] Ms. Sexton initially refused ambulance transport but later sought treatment at Tennova Turkey Creek Medical Center.[2] She alleged she experiences nightmares, anxiety and loss of sleep when recalling the assault. She began treatment with Dr. Glenn Peterson,[3] who, in response to a causation letter, found that Ms. Sexton suffers from post-traumatic stress disorder and that the assault directly caused her PTSD.

Bad Daddy's argued Ms. Sexton's injury was not compensable because the alleged assault stemmed from an inherently private dispute imported into the workplace and the employment did not exacerbate it. Additionally, Bad Daddy's argued Ms. Sexton's injury was not identifiable by time and place because the date of injury contained in her

---

[1] Ms. Sexton submitted the police report for consideration. Bad Daddy's objected that police reports are expressly excluded under Tennessee Rules of Evidence Rule 803(8). The Court sustained the objection and did not consider the police report.

[2] When Ms. Sexton originally filed bills from Turkey Creek Medical Center in the amounts of $300.00 and $468.63, she did not submit an affidavit from the records custodian. Bad Daddy's objected to the admissibility of those bills as they were not authenticated. However, Ms. Sexton subsequently filed the affidavit from the records custodian for Tennova Turkey Creek Medical Center. Therefore, the Court overruled the objection and allowed the bills into evidence.

[3] The parties did not indicate Dr. Peterson's specialty. Ms. Sexton submitted one hand-written note of Dr. Peterson, which Bad Daddy's objected to as inadmissible due to lack of a signature and affidavit from the records custodian. The Court sustained the objection and did not consider the note. Ms. Sexton also submitted a signed causation letter from Dr. Peterson, to which Bad Daddy's did not object.

2

affidavit (February 13, 2017) differed from the date of injury listed on her Petition for Benefit Determination (PBD) (January 13, 2017).

## Findings of Fact and Conclusions of Law

### Standard applied

Because this case is in a posture of an Expedited Hearing, Ms. Sexton need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2016).

### Analysis

The dispositive issue is whether Ms. Sexton's injury arose out of her employment. "Arising out of" the employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). The element of causation is satisfied when the "injury has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992). Conversely, "[t]he mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work." *Blankenship v. Amer. Ordnance Sys., LLC*, 164 S.W.3d 350, 354 (Tenn. 2005). Accordingly, "an injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered as arising out of the employment." *Jackson v. Clark & Fay, Inc.*, 270 S.W.2d 389, 390 (Tenn. 1954).

In assault cases, Tennessee workers' compensation law recognizes three scenarios: (1) assaults with an "inherent connection" to the work, such as disputes over pay, performance, or termination; (2) assaults resulting from "inherently private" disputes imported into the workplace from the employee's private life and not exacerbated by the employment; and (3) assaults resulting from a "neutral force," such as a random assault by a third party. *Padilla v. Twin City Fire Ins. Co.*, 324 S.W.3d 507, 511 (2010). Assaults falling into the first category are compensable; assaults falling into the second category are not; and compensability of assaults in the third category "depend[s] on the facts and circumstances of the employment." *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d 220, 227 (Tenn. 2007).

The Supreme Court discussed the street-risk doctrine in *Hurst v. Labor Ready*, 197 S.W.3d 756 (Tenn. 2006). The Court explained "we approved the so-called 'street risk' doctrine that allows an employee to prove causation where the employment 'exposes an employee to the hazards of the street.'" *Id.* at 761 (quoting *Braden,* at 499).

3

In *Mattress Firm, Inc. v. Mudryk*, No. W2014-01017-SC-R3-WC, 2015 Tenn. LEXIS 689 (Tenn. Workers' Comp. Panel Aug. 24, 2015), the Supreme Court's Special Workers' Compensation Appeals Panel applied the street-risk doctrine in circumstances where employees were "indiscriminately exposed to the public in the course of their duties." *Id.* at *22. The employee in *Mudryk* worked as a store manager at a retail location. While performing her work duties, she was injured during an attempted robbery. The Panel relied upon a prior case in which involving "indiscriminate exposure to the general public" as a condition under which the employee's work was required to be performed, leading to the Supreme Court's conclusion that "the actions of persons on those premises can be considered a hazard of employment." *Id.* at *20-21 (quoting *Beck v. State*, 779 S.W.2d 367, 371 (Tenn. 1989)).

The Appeals Board recently applied the street-risk doctrine in a case where the groundskeeper of an apartment complex was shot. The Board noted that the groundskeeper "had duties that exposed him to the general public." Specifically, "the public was invited onto the property for a variety of reasons and, more importantly, had unrestricted access to the common areas of the property, creating risks of the street in and around Employer's property." *Morales v. Boshwit Bros., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 23, at *12 (Mar. 22, 2017).

First, although Ms. Sexton's affidavit listed February 13, 2017, her PBD, the First Report of Injury, and the Tennova bills reflect a January 13, 2017 date of injury. The Court finds Ms. Sexton established January 13, 2017, as the date of injury and the reference in the affidavit was in error.

Here, Ms. Sexton worked at a restaurant open to the general public. She was exposed to any person who entered the restaurant and any person around the outdoor common areas. The Court holds that the street-risk doctrine applies. The only testimony offered as to the reason for the assault is Ms. Sexton's affidavit, in which she said the customer assaulted her because the customer thought she hung up on her when she called the restaurant earlier in the day. Therefore, Ms. Sexton established by unrefuted testimony a connection, albeit tenuous, between the assault and her employment.

The Court holds that Ms. Sexton came forward with sufficient evidence that she is likely to prevail at a hearing on the merits that the assault was work-related. Thus, the Court now turns to the requested benefits.

Tennessee Code Annotated section 50-6-204(a)(1)(A) provides that an employer shall furnish reasonable and necessary medical treatment related to the work injury. A work-related injury "causes . . . the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . need for medical treatment." Tenn. Code Ann. § 50-6-

4

102(14)(C). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D). Furthermore, an employer runs the risk of being required to pay for unauthorized treatment if it does not provide the treatment made reasonably necessary by the work injury as required by Tennessee Code Annotated section 50-6-204(a)(1)(A). *See Young v. Young Elec. Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16 (May 25, 2016).

Here, Ms. Sexton notified her supervisor of the work injury and informed her that she would seek medical treatment for the assault. However, Bad Daddy's never provided her with a panel of physicians. The only medical opinion before the Court is Dr. Patterson's opinion establishing Ms. Sexton's PTSD diagnosis and causal connection to the work injury. Bad Daddy's did not offer any medical opinion to refute Dr. Patterson's opinion. Therefore, Ms. Sexton is likely to succeed at a trial on the merits that she sustained PTSD as a result of the assault.

Ms. Sexton asked for reimbursement for all medical costs, authorized ongoing treatment with Dr. Peterson, and attorney's fees. The Court finds it was reasonable for Ms. Sexton to seek an evaluation and treatment at Tennova Turkey Creek Medical Center and orders Bad Daddy's to pay the $300.00 and $468.63 charges for that treatment. Ms. Sexton did not submit any bills from treatment with Dr. Peterson. Therefore, the Court is unable to address those expenses at this time. As for ongoing treatment, Bad Daddy's may authorize Dr. Peterson or, in the alternative, provide Ms. Sexton with a panel of psychologists or psychiatrists from which she may select an authorized treating physician for ongoing treatment. Finally, Ms. Sexton did not submit an affidavit of her attorney's fees. Therefore, the Court is unable to address fees at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Bad Daddy's Burger Bar shall provide Ms. Sexton with medical treatment for her injuries as required by Tennessee Code Annotated section 50-6-204 (2016). Bad Daddy's shall either authorize Dr. Patterson to provide ongoing treatment or provide a panel of psychologists or psychiatrists from which Ms. Sexton shall select an authorized treating physician for ongoing reasonable, necessary, and related treatment.

2. Bad Daddy's shall pay the Tennova Turkey Creek Medical Center bills in the amounts of $300.00 and $468.63.

3. This matter is set for a Scheduling Hearing on **October 10, 2017, at 9:30 a.m. Eastern Time**. The parties must call (865) 594-0091 or (toll-free) (855) 543-5041 to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

5

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED this the 5th day of September, 2017.**

**LISA A. LOWE, JUDGE**
**Court of Workers' Compensation Claims**

# APPENDIX

The Court reviewed the entire case file. Specifically, the Court reviewed the following documents marked as exhibits for ease of reference:

**Exhibits:**
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Docketing Notice for Decision On-The-Record Determination
5. Employer's Motion to Compel Responses to Written Discovery Requests to Employee Caitlyn Sexton
6. Employer's Motion to Stay Court's On the Record Decision for Employee's Request for Expedited Hearing, or in the Alternative Motion for Enlargement of Time
7. Employee's Response to Motion to Stay or for Enlargement of Time
8. Employee's Response to Employer's Motion to Compel
9. Employer's Response to Employee's Response to Motion to Stay-Enlargement of Time
10. Order Granting Employer's Request for Enlargement of Time
11. Order Denying Employer's Motion to Compel Responses to Written Discovery Requests
12. Subpoena to Aubrey's
13. Subpoena to Dr. Angela Shupp
14. Subpoena to Home Run, Inc.
15. Employer's Motion to Dismiss, or in the Alternative, Motion to Strike Employee's Request for Expedited Hearing
16. Employer's Response to Employee's Request for Expedited Hearing
17. Employer's Supplemental Response to Employee's Request for Expedited Hearing
18. Employer's Production of Documents to Court in Response to Employee's Request for Expedited Hearing
19. Employee's Motion to File Amended PBD and Request for Expedited Hearing
20. Employee's Amended Motion to File Amended PBD and Request for Expedited Hearing
21. Employer's Response to Motion to File Amended PBD and Request for Expedited Hearing
22. Employer's Notice of Withdrawal of Motion to Dismiss
23. Agreed Order Allowing Employee to File Amended PBD and Amended Request for Expedited Hearing
24. Amended Petition for Benefit for Determination
25. Amended Request for Expedited Hearing
26. Employer's Motion Seeking Permission to File Medical Records for on the Record Decision of Employee's Amended Request for Expedited Hearing

27. Employee's Response to Employer's Motion to Late-Filed Medical Records
28. Order Granting Employer's Motion to File Medical Records
29. Employer's Notice of Filing Medical Records for Court's Record Determination of Employee's Amended Request for Expedited Hearing
30. Employer's Objection to Admissibility of Evidence Listed within Amended Docketing Notice
31. Employer's Position Statement for Court's Determination of Employee's Amended Request for Expedited Hearing
32. Employee's Response to Employer's Objections to Admissibility
33. Employee's Supplemental Response to Employer's Objections to Admissibility
34. Employee's Position Statement for Expedited Hearing
35. Employer's Response to Employee's Position Statement for Expedited Hearing
36. Affidavit of Caitlyn Sexton
37. First Report of Work Injury, Form C-20
38. Notice of Denial of Claim for Compensation, Form C-23
39. Police Report
40. Medical Expenses of Tennova
41. Medical/Causation Questionnaire of Dr. Glenn R. Peterson
42. Medical Records of Dr. Angela Schupp, Trinity Medical Associate

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 5th day of September, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
| --- | --- | --- | --- | --- |
| Jonathan W. Doolan, Employee's Attorney | | | X | jonathan@collinsdoolan.com |
| Jess Maples, Employer's Attorney | | | X | jess.maples@leitnerfirm.com |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov

8