

**FILED**
**Aug 18, 2022**
**11:01 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **The Estate of Raymond Gaters,** | ) | **Docket No. 2021-08-1240** |
| **Deceased Employee, by Kashia Gaters,** | ) | |
| **Surviving Spouse,** | ) | |
| **Deceased Employee,** | ) | |
| **v.** | ) | **State File No. 69005-2021** |
| **Triyar Management, Inc.,** | ) | |
| **Employer,** | ) | |
| **And** | ) | |
| **Oak River Insurance Co.,** | ) | **Judge Kenneth M. Switzer** |
| **Carrier.** | ) | |

---

## COMPENSATION ORDER GRANTING SUMMARY JUDGMENT

---

Triyar Management, Inc. moved for summary judgment, asserting that no issues of material fact exist as to whether Raymond Gaters suffered injuries arising out of his employment. The question is whether Mr. Gaters was working on the evening when, tragically, he was fatally wounded. The undisputed proof shows that he was not working, so the Court holds that Triyar Management is entitled to summary judgment.

### History of Claim

The parties agree that Mr. Gaters lived and worked at an apartment complex managed by Triyar. According to pleadings and Ms. Gaters's testimony, on the evening of Thursday, July 29, 2021, Mr. Gaters was fatally shot outside the apartments. Triyar asserts that his job was maintaining the apartments, while Ms. Gaters contends that he also engaged in "communication with tenants and others."

In Triyar's Statement of Undisputed Material Facts, it relies on the affidavit of Jerilyn Moran, community manager of the apartments. Ms. Moran testified that Mr. Gaters did not work and earned no wages on July 29. She further stated that Triyar did not request that he do any work on that date, and that a call log showed he received no calls from residents asking that he perform maintenance or do any other work on July 29. In addition,

1

Mr. Gaters had a pending workers' compensation claim for a separate injury, for which he received temporary total disability benefits from February through August 2, 2021. Thus, on July 29, 2021, Mr. Gaters was restricted from work. Triyar Management, Inc. asserts that these facts show that Mr. Gaters's fatal injury did not arise out of his employment.

In response, Ms. Gaters denies the above facts, except that as to whether he earned wages on July 29, she argues that he was receiving payment due to living at the apartment complex.

For each of the remaining facts, she repeats the same denials: "This fact is a determinative issue in this cause of action for the trier of fact to decide at a Compensation Hearing." She then offers her entire affidavit and cites to the same eleven pages of her deposition transcript for each factual assertion as proof that Triyar's material facts are disputed.

Looking to these documents, the Court deduces that Ms. Gaters relies on the following as proof of disputed facts.

In her affidavit, she testified that Mr. Gaters's duties went beyond maintenance to include "communication with tenants and others," and that some work was not always reported to his supervisor or Triyar. She wrote that sometimes individuals approached him "at any and all hours of the day or night." Ms. Gaters further said that regardless of receiving workers' compensation benefits for another claim, Mr. Gaters continued to work during the time he received those benefits.

In her deposition, Ms. Gaters testified regarding her personal knowledge about his job duties and the night in question. She said Mr. Gaters typically worked from 8:00 to 5:00 p.m. but sometimes responded to calls after hours or worked on weekends. On the evening of July 29, Ms. Gaters said he left their apartment at approximately 8:00 p.m. to "go to his sister's house." She clarified, "I'm not sure did he work any—did any work earlier that day. I'm not sure. But that night, you know, he just went to visit his sister, and he came—he called me and said he was on his way home and that was it." Ms. Gaters was resting in their apartment when he returned.

Ms. Gaters candidly testified regarding the circumstances of his death: "I don't know what happened. I can't say did a tenant stop him. I don't know. To this day I don't know what happened. . . . Until they knocked on my door and said he was on the lawn."

Ms. Gaters then testified as to her knowledge of whether Mr. Gaters was working at the time of his death in the following exchange:

Q: So he wasn't responding to a maintenance call. He just told you that he was going to see his sister that evening?

A: He told me he was going to see his sister. Now on his way back I don't know did he get a call from anyone or not. I don't know.

I don't know did a tenant ask him to do something, you know, during that prior time when he said he was on his way. I don't know did a tenant, you know, ask him to do something for them. I don't know. Nobody knows. I don't know. But the thing of it is I don't know did a tenant stop him for a light bulb. We don't know. I don't know. So I don't know if he got a call from Jera [Ms. Moran] or not. I don't know.

Ms. Gaters later admitted in response to her attorney's questioning that "I don't know if he worked earlier that day or not." She added, "I don't know if Jera [Ms. Moran] or anyone called him during between the time he left from his sister's to my house. I don't know. You know, he probably got a call, you know."

## Law and Analysis

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04 (2021).

When a party who does not bear the burden of proof at trial files a motion for summary judgment, it must do one of two things to prevail: (1) submit affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrate that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. Tenn. Code Ann. § 20-16-101 (2021); *see also Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).

If the moving party successfully meets one of those elements, the nonmoving party must respond by producing affidavits, pleadings, depositions, responses to interrogatories, or admissions that set forth specific facts showing that there is a genuine issue for trial. Tenn. R. Civ. P. 56.06. The nonmoving party's response "must do more than simply show that there is some metaphysical doubt as to the material facts." *Rye*, at 265. If the nonmoving party fails to do so, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." Tenn. R. Civ. P. 56.06.

Here, Triyar argues it offered evidence negating an essential element of Mr. Gaters's claim—that his injury arose primarily out of his employment—and showed that Ms. Gaters's evidence is insufficient to establish that essential element of his claim.

The Workers' Compensation Law defines "injury" as one that arises primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(14). The phrase "arising out of" refers to a causal connection between the conditions under which

3

the work is required to be performed and the resulting injury. *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). This means that the event causing the injury must have its origin in a risk connected with the employment. *Id.* The phrase "in the course and scope" refers to the time, place, and circumstances of an employee's injury. *Crew v. First Source Furniture Grp.*, 259 S.W.3d 656, 664 (Tenn. 2008).

Triyar argues that Mr. Gaters's injury did not arise out of his employment because the facts show that on that day, he performed no work, earned no wages, was not requested by management to perform any work-related tasks, and did not receive any calls from residents or anyone else requesting that he perform any work-related tasks. These material facts negate an essential element of the claim. Specifically, Ms. Moran's affidavit contains undisputed facts that Mr. Gaters was not working on the evening of July 29 when he died. Having established that fact, the burden now shifts to Ms. Gaters to set forth specific facts showing there is a genuine issue of material fact.[1]

Ms. Gaters argues that her responses to the statement of undisputed facts establish a genuine dispute of material facts. However, Ms. Gaters's responses to Triyar's Statement repeatedly state, "This fact is a determinative issue in this cause of action for the trier of fact to decide at a Compensation Hearing." These blanket denials, without identifying *specific facts and proof* to support them, are unpersuasive.

Ms. Gaters additionally argues that Mr. Gaters lived and worked at the apartment complex. However, Ms. Gaters must present evidence showing more than his mere presence at the place of injury to satisfy the "arising out of" requirement.

Ms. Gaters also cited her deposition testimony, which ultimately does not support her position. She testified that Mr. Gaters's standard working hours were 8 a.m. to 5 p.m., and he occasionally worked after hours or on weekends. But, importantly, she did *not* testify that Mr. Gaters was working on the evening of July 29, 2021. Instead, she candidly repeated that she did not know if he was working or simply returning home from a visit with his sister. She speculated that he might have been working. She also offered no proof of the time, place or circumstances of the shooting, other than Mr. Gaters was found on the lawn. She did not witness the incident or offer proof from other witnesses.

Ms. Gaters further points to disputed facts, such as the extent of Mr. Gaters's job duties, and whether the van he drove that housed his work tools was a work vehicle. However, these factual issues are not material to the question of whether Mr. Gaters was working on the evening of July 29. *See King v. Kasai N. Am., Inc,* 2019 TN Wrk. Comp. App. Bd. LEXIS 19, at *8-9 (Disputed issues of fact must be "material" to the legal issue

---

[1] Triyar argues that, because he was receiving temporary total disability benefits on the day he died, logically, Mr. Gaters was restricted from all work and could not have worked that day. This argument is unpersuasive. While he was restricted from all work, that does not necessarily mean that he did not work.

presented).[2]

Ms. Gaters's counsel cited three cases that do not support her position.

First, in *Morales v. Boshwit Bros., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 23 (Mar. 22, 2017), the employee similarly worked as a "groundskeeper" at an apartment complex where he also lived. He suffered gunshot wounds *while mowing the lawn.* The Appeals Board found, at the interlocutory stage, that the employee was likely to show at a hearing on the merits that the injury arose from employment. *Id.* at \*12. This case, however, is distinguishable, because the employee in *Morales* was undeniably working while mowing the lawn when he became injured. The evidence here is that Mr. Gaters was not working, and Ms. Gaters offered no evidence to bring this fact into dispute.

Next, in *Hurst v. Labor Ready,* 197 S.W.3d 756 (Tenn. 2006), the employee was shot outside his employer's office with coworkers waiting to be paid. The Supreme Court agreed with the trial court that the incident arose out of his employment because the employee was "outside Labor Ready's office waiting to get paid in accordance with Labor Ready's payment procedure," and the employee "was identifiable as a Labor Ready employee because he was standing directly in front of Labor Ready's office with other Labor Ready workers while waiting to be paid." *Id.* at 761-2. Here, the facts do not suggest that Mr. Gaters was following a Triyar work procedure or that he was identifiable as a Triyar employee when he was killed.

Finally, although counsel did not name the case, he argues that the opinion regarding a traveling employee who drowned while using a hotel swimming pool supports Ms. Gaters's position. The Court disagrees. In *McCann v. Hatchett,* 19 S.W.3d 218 (Tenn. 2000), the Supreme Court held that the injury or death of a traveling employee occurring while reasonably engaged in a reasonable recreational or social activity arises out of and in the course of the employment. *Id.* at 221-2. The high court's discussion focused exclusively on traveling employees; Mr. Gaters was not a traveling employee.

The Court finds Ms. Gaters has not identified facts showing that there is a genuine issue for trial, so summary judgment is appropriate.

---

[2] The Court disregards Ms. Moran's assertion that Mr. Gaters was unloading groceries at the time of his death. Ms. Moran did not witness the event, so it is hearsay. Further, this purported fact is also immaterial to the Court's conclusion.

**IT IS, THEREFORE, ORDERED AS FOLLOWS:**

1. The Court grants Triyar Management, Inc.'s motion for summary judgment and dismisses Ms. Gaters's claim with prejudice to its refiling.

2. Unless appealed, this order shall become final in thirty days.

3. The Court assesses the $150.00 filing fee against Triyar Management, Inc., for which execution might issue as necessary. Triyar Management, Inc. shall pay the filing fee to the Court Clerk within five business days of the order becoming final.

4. Triyar Management, Inc. shall file Form SD-2, Statistical Data form, with the Court Clerk within five business days of this order becoming final.

**ENTERED August 18, 2022.**

*Kenneth M. Switzer*
_____
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent as indicated on August 18, 2022.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Andrew Wener, Employee's Attorney | | | X | awener@wenerlawfirm.com |
| Fredrick Baker, Employer's Attorney | | | X | fbaker@wimberlylawson.com zkiffmeyer@wimberlylawson.com |

_____
**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**

6



Compensation Order Right to Appeal:

If you disagree with this Compensation Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the Compensation Order was filed.  When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  The Court Clerk will prepare the technical record and exhibits for submission to the Appeals Board, and you will receive notice once it has been submitted. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  A licensed court reporter must prepare a transcript, and you must file it with the Court Clerk *within fifteen calendar days* of filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of filing the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the testimony presented at the hearing.  The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board.  If the Appeals Board must review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.  You have *fifteen calendar days* after the date of that notice to file a brief to the Appeals Board.  *See the Rules governing the Workers' Compensation Appeals Board on  the Bureau's website*

**If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.  Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*