FILED

February 3, 2017

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time 1:15 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **RIGOBERTO MORALES,** | ) | **Docket No. 2016-08-0876** |
| **Employee,** | ) | |
| **v.** | ) | |
| **BOSHWIT BROTHERS, INC.** | ) | **State File No. 58695-2016** |
| **Employer,** | ) | |
| **And** | ) | |
| **CHARTER OAK FIRE INS. CO.,** | ) | **Judge Allen Phillips** |
| **Insurance Carrier.** | ) | |

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on January 24, 2016, upon the Request for Expedited Hearing filed by Rigoberto Morales pursuant to Tennessee Code Annotated section 50-6-239 (2016). Mr. Morales requested medical and temporary disability benefits for injuries he sustained in an assault while working for Boshwit Brothers. Boshwit contended his injury did not arise out of his employment. Accordingly, the central legal issue is whether Mr. Morales came forward with sufficient evidence at the Expedited Hearing to show his injuries arose out of his employment. For the following reasons, the Court holds Mr. Morales did not come forward with the required evidence and denies his claim at this time.

### History of Claim

Mr. Morales worked at a Memphis apartment complex operated by Boshwit. His job required him to mow grass and remove garbage. On July 22, 2016, while he was mowing grass, Mr. Morales was the victim of an assault.

Mr. Morales is both an employee and a resident of the apartment complex. He testified that during the five years he has lived there, he has observed frequent

1

police presence, heard gunshots, and knew of persons who had been robbed, including a cousin who also resides at the complex. He considered the complex located in a high crime area.

Because public streets border the apartment complex on all sides, Mr. Morales contended the location allowed any individual, including would-be criminals, to enter the grounds at will. This exposed him to the hazards incident to a public thoroughfare whenever he worked. Through drawings and photographs, he detailed how the complex and the surrounding grounds were located directly adjacent to the bordering streets.

Ms. Cara Currie, Boshwit's property manager, described the area where Mr. Morales was assaulted as being one where both he and the general public are exposed to a public street. However, the only area of the complex that Boshwit opens to the public is the rental office. She explained that the only overt invitation to enter the premises is one for the public to patronize the rental office for business purposes.

On July 22, Mr. Morales was mowing grass near one of the public streets bordering the complex. At 10:40 a.m., he felt someone grab his neck and left shoulder from behind. The assailant dragged him into a nearby wooded area. After a few moments, the assailant started to leave. Though less than clear regarding what the assailant said or did, Mr. Morales explained that he began to flee the area to escape the assailant.[1] When he did so, the assailant fired three shots from a handgun. One round struck Mr. Morales in the upper left thigh; the other two entered the rear of his right calf and exited his right shin. The assailant then fled. Police neither apprehended nor identified the assailant, and his motive for attacking Mr. Morales remains unknown.

After the shooting, Mr. Morales used his cell phone to call his wife, who came to the scene with a Boshwit employee. They summoned emergency personnel. An ambulance then transported Mr. Morales to Regional One Medical Center where he underwent surgery to repair the damage to his right leg.

Records from Regional One indicate the bullets so severely shattered both the tibia and fibula that surgeons had to insert a metal rod into Mr. Morales' leg. (Ex. 1). He spent four days in the hospital and incurred bills of approximately $60,000. (Ex. 2). He offered no other medical records into evidence.

---

[1] Mr. Morales testified through a Spanish interpreter. Spanish is his second language; his first language is an indigenous Guatemalan dialect.

Mr. Morales requested payment of his medical bills. He also requested temporary benefits because he has not worked since the injury.

**Findings of Fact and Conclusions of Law**

*Standard applied*

At this Expedited Hearing, Mr. Morales need not prove every element of his claim by a preponderance of the evidence. Instead, he must come forward with sufficient evidence from which the court can determine he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2016); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015). This lesser evidentiary standard does not relieve Mr. Morales of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment, but allows some relief to be granted if his evidence does not rise to the level of a "preponderance of the evidence." *Buchanan v. Carlex Glass Co.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Sept. 29, 2015).

*Analysis*

The dispositive issue is whether Mr. Morales' injury arose out of his employment. "Arising out of" the employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). The element of causation is satisfied when the "injury has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992). Conversely, "[t]he mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work." *Blankenship v. Amer. Ordnance Sys., LLC*, 164 S.W.3d 350, 354 (Tenn. 2005). Accordingly, "an injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered as arising out of the employment." *Jackson v. Clark & Fay, Inc.*, 270 S.W.2d 389, 390 (Tenn. 1954).

In assault cases, Tennessee recognizes three scenarios. First, assaults with an "inherent connection" to the work, such as disputes over pay, performance, or termination, are compensable. *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d 220, 227 (Tenn. 2007). Second, assaults resulting from "inherently private" disputes imported into the workplace from the employee's private life are not compensable. *Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d 768, 771 (Tenn. 1998). The third type of assault case is exemplified by Mr. Morales'

situation: assaults resulting from a "neutral force," such as a random assault by a third party. Compensability of these assaults "depend[s] on the facts and circumstances of the employment." *Id.*

In examining the facts and circumstances of this case, the Court first considers Mr. Morales' argument that he "was exposed to danger and shot as a result of his employment." T.R. 4 at 3. He argues he lives and works in a high crime area, as indicated by his personal knowledge of police presence and criminal activity.[2] Mr. Morales argues Boshwit placed "him at risk in a more dangerous neighborhood" and his use of a lawnmower "cut off his senses and awareness of dangers around him." *Id.* Thus, his employment "heightened his vulnerability and made his assault peculiar to his employment." *Id.*

In support of this argument, Mr. Morales points to *Binkley v. Frontier Enter., Inc.,* No. 89-29-1, 1989 Tenn. LEXIS 543 (Tenn. S. Ct. Dec. 18, 1989), an unreported Supreme Court case where a cab driver was shot and killed when his employer dispatched him to a "rather high crime area in Nashville." *Id.* at *2. The *Binkley* court relied, without elaboration, upon *Hudson v. Thurston Motor Lines,* 583 S.W.2d 597 (Tenn. 1979), to find that the "trial judge correctly held that the duties of the driver exposed him to hazards such as that which resulted in his death." *Id.*

Because *Binkley* relied upon it for authority, this Court must consider the facts of *Hudson* in context of Mr. Morales' argument. In *Hudson,* the Court held a truck driver suffered a compensable injury when robbed at gunpoint while entering his delivery truck in a restaurant parking lot. *Hudson,* 583 S.W.2d at 599. Adopting the so-called "street risk doctrine," the Court found the driver was distinguishable from other patrons of the restaurant because he was in possession of a truck that "presented the potentiality, to the assailants, of worthwhile loot for theft of the vehicle which was [his] responsibility." The Court found those "circumstances provide a rational connection with the employment" and noted its ruling shared a common theme with earlier compensable assault cases: there was something to identify the employee with his employment at the time of the assault. *Id.*

---

[2] Mr. Morales proposed to offer evidence regarding the crime rate of his neighborhood by tendering an article from the *Memphis Daily News* newspaper that detailed reports of criminal activity in the area of the apartment complex. Boshwit objected on grounds of authenticity, hearsay, relevance, and undue prejudice. The Court addressed the issue at the Expedited Hearing prior to hearing evidence. The Court excluded the proffered evidence on hearsay grounds. Even though Mr. Morales secured an affidavit from the *Daily News* editor charged with compiling the data, hence authenticating the article, the contents of the article are still hearsay. *State v. Henretta,* 325 S.W.3d 112, 144 (Tenn. 2010). Likewise, the Court denied Mr. Morales' request to admit the article as an exception to the hearsay rule under Tennessee Rule of Evidence 803(17), *Market Reports and Commercial Publications.* The Court found the article was not the type of publication "used and replied upon by the public or by persons in particular occupations."

Comparing his plight to the employee in *Binkley*, Mr. Morales described the neighborhood in which he lives and works as being "high crime." However, unlike the *Binkley* employee, this Court finds Boshwit did not send Mr. Morales to the purportedly high crime area because of his job. Instead, Mr. Morales could have been present in the area just as easily because he was a resident and not merely an employee.

Likewise, the Court finds *Hudson* distinguishable. Though Mr. Morales' activity of mowing grass was certainly incident to his employment, there was nothing to identify him with Boshwit at the time of the assault. Instead, the evidence shows his risk of being assaulted in mid-morning was equal to the risk borne by any other person near the public street at the time. This fact separates him from the *Hudson* employee, who was distinguishable from the public as an employee.

Another instructive comparison may be found in *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992), also relied upon by Mr. Morales. There, our Supreme Court confirmed the street risk doctrine applies to "workers whose employment exposes them to the hazards of the street, or who are assaulted under circumstances that fairly suggest they were singled out for attack because of their association with their employer." *Id.* at 498. The Court found that employee's injury arose out of his employment because he was assaulted while engaging in his duties (retrieving documents from a company vehicle) and that he was doing so when visibly identifiable as an employee. Further, as in *Hudson*, his possession of a company vehicle made him an attractive target for robbery. *Id.* at 499. Importantly, the *Braden* court also held any reasonable doubt as to whether an injury arose out of the employment was to be resolved in favor of the employee. *Id.* at 498.

This Court respectfully rejects Mr. Morales' reliance upon *Braden*. First, it was decided by the Supreme Court's specific reference to the former liberal presumption; accordingly, this Court cannot rely upon it as controlling authority. *See* Tenn. Code Ann. § 50-6-116 (2016) (for injuries after July 1, 2014, the Court must construe the Workers' Compensation Law fairly and impartially, favoring neither the employee nor the employer). Second, the facts are distinguishable; the evidence in this case does not support a finding that the assailant singled out Mr. Morales for assault because of his employment. Instead, Mr. Morales was the victim of a senseless act of violence having no motive.

Contrary to the cases relied upon by Mr. Morales, this Court agrees with Boshwit that the reasoning of *Padilla v. Twin City Fire Ins. Co.*, 324 S.W.3d 507

5

(Tenn. 2010), is applicable to the facts of this case. There, the employee was typically the first to arrive at the workplace, unlocking the doors and opening the shop for business. *Id.* at 509. On the date of alleged injury, the employer arrived to find the employee lying near the rear door of the shop, dead from multiple gunshot wounds. *Id.* at 509. Subsequent police investigation revealed no motive for the shooting, and they never apprehended the assailant. *Id.*

Under those circumstances, the trial court found the shooting was a "neutral assault;" there was neither evidence of a burglary against the employer, an event that could have created a compensable event, nor evidence of a crime against the employee as a result of a personal conflict, an event clearly leading to non-compensability. Likewise, the trial court refused to apply the street risk doctrine because, "even though [employer] was located in an area with a 'higher than average crime rate,' the business did not advertise to the public, did not attract the public, and was not frequented by the public." *Id.* at 510.

In affirming, our Supreme Court first held the evidence supported a finding that the employee was the victim of "an entirely random assault." *Id.* at 512. "Whatever the true motive of the assailant may have been, the evidence does not preponderate against the trial court's finding that [it] was a neutral force assault." *Id.* Further, the Court noted it first "adopted the 'street risk' doctrine in [*Hudson*] to offer guidance in an otherwise murky area of the law." *Id.* at 513. The Court then explained the current "application of the [doctrine]" by stating:

> When an employee suffers a "neutral assault" within the confines of her employer's premises . . . the "street risk" doctrine will not provide the required causal connection between the injury and the employment *unless the proof fairly suggests either that the attacker singled out the employee because of his or her association with the employer or that the employment indiscriminately exposed the employee to dangers from the public.*

*Id., citing Wait,* 240 S.W.3d at 230 (Emphasis added).

The Supreme Court agreed with the trial court's findings that, even though the business was located in a neighborhood with a higher than average crime rate, employer was not frequented by the public and did not advertise to the public. Thus, the Court concluded the employment did not indiscriminately expose that employee to the dangers of the public, including crime in the neighborhood. *Id.* It reaffirmed that, "the mere presence of the employee at the place of injury because of employment will not alone result in the injury being considered as arising out of employment." *Id.* at 515.

6

The proposition that mere presence at the workplace is insufficient for compensability stands in contrast to the result in *Jesse v. Savings Prods.*, 772 S.W.2d 425 (Tenn. 1989). There, the employee was raped by a stranger on the premises of her employer's convenience store. In holding that the assault arose out of the worker's employment, the Court recognized that "the assailant's motive is not always determinative" and the employee need not always establish the stranger's motivation in order to connect the assault to the employment. *Id.* at 427. But, even if the attack were simply an irrational act of violence, "the Plaintiff's indiscriminate exposure to the general public is *one of the conditions under which her work was required to be performed,* and the actions of those persons on the premises are reasonably considered hazards of the employment." *Id.* (Emphasis added).

Similarly, in *Beck v. State*, 779 S.W.2d 367 (Tenn. 1989), an employee suffered an assault at the hands of an assailant whose motives were unknown. But, the assault occurred on the premises of a State Department of Safety facility open to the public. *Id.* at 369. As in *Jesse*, the Court again noted it was the employee's "indiscriminate exposure to the general public [because] of the conditions under which her work was required to be performed" that exposed her to "the actions of persons on those premises." *Id.* at 371. Accordingly, such exposure was "considered a hazard of the employment." *Id.*

In this case, the Court finds Mr. Morales was the victim of an entirely random assault, neutral as to his employment. Further, the Court finds the street risk doctrine does not apply. Boshwit did not openly solicit the general public to visit its apartment complex as a part of its business and there is no proof the general public visited this particular complex more frequently than any other neighborhood. The assailant did not single out Mr. Morales for assault because of his employment nor was Mr. Morales indiscriminately exposed to dangers of the public by his employment.

Unlike the employers in *Jesse* and *Beck*, Boshwit's business is not integrally tied to indiscriminate exposure to the public. Instead, the regular course of business of an apartment complex is providing a residential community and any invitation to the public is only collateral during the limited circumstances of rental inquiries and leasing activities. Mr. Morales' presence on his employer's premises when assaulted was purely coincidental, contemporaneous, and collateral to his employment. *See Jackson*, 270 S.W.2d at 390. The Court cannot extend coverage under these circumstances as such would cause Boshwit to become "an insurer against every accidental injury . . . occurring during employment." *See Scott v. Shinn*, 105 S.W.2d 103, 105 (Tenn. 1937). Accordingly, the Court must deny Mr.

7

Morales' claim for benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Morales' claim for benefits is denied.

2. This matter is set for a Scheduling (Status) Hearing on March 9, 2017, at 10:30 a.m. Central time.

**ENTERED this the 3rd day of February, 2017.**

_____
**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

Scheduling (Status) Hearing:

A Scheduling/Status Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call toll-free at 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

# APPENDIX

Exhibits:

1. Revised Filing of Medical Records from Regional One
2. Certified Medical Bills from Regional One
3. "Crime Report Map" purportedly published in *The Memphis Daily News* (identification only)
4. Aerial photographs of N. Waldran Blvd. and Delmar Ave., streets adjacent to the apartment complex
5. Additional aerial photographs of N. Waldran Blvd. and Delmar Ave.
6. Hand-drawn diagram of the apartment complex
7. Street-view photograph of the crime scene

Technical record:[3]

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employee's Brief
5. Employee's Witness and Exhibit List
6. Employer's Expedited Hearing Brief
7. Employer's Witness List
8. Employer's Exhibit List
9. Employer's Motion to Strike Regional One Medical Records and Bills
10. Employee's Response to Motion to Strike
11. Employer's Motion in Limine (regarding newspaper crime reports)
12. Employee's Response to Motion in Limine
13. Editor's certification of *Daily News* Crime Report

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 3rd day of February, 2017.

| Name | Certified Mail | First Class Mail | Via Email | Service Sent To: |
|---|---|---|---|---|
| Bryce W. Ashby, Esq., Attorney for Employee | | | X | Bryce@donatilaw.com |
| Paul Nicks, Esq., Attorney for Employer | | | X | PNICKS@travelers.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov