**FILED**

**March 22, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 12:50 P.M.**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Rigoberto Morales | )    Docket No.    2016-08-0876 |
| | ) |
| v. | )    State File No. 58695-2016 |
| | ) |
| Boshwit Brothers, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Allen Phillips, Judge | ) |

---

### Reversed and Remanded—Filed March 22, 2017

---

In this interlocutory appeal, the employee challenges the trial court's conclusion that he did not present sufficient evidence that he will likely prevail at trial in establishing injuries arising primarily out of his employment. The employee was injured when he was assaulted by an unknown person while performing his work duties as a groundskeeper for the employer. He sustained gunshot wounds that required surgery and hospitalization, and the employer denied the claim on the basis that the assault did not arise out of the employment. Following an expedited hearing, the trial court concluded that the street risk doctrine did not render the employee's injuries compensable and that the employee was not likely to prevail at a hearing on the merits. The employee has appealed. Having carefully reviewed the record, we reverse the trial court's decision and remand the case.

Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, joined. Judge David F. Hensley filed a separate dissenting opinion.

Bryce W. Ashby, Memphis, Tennessee, for the employee-appellant, Rigoberto Morales

Paul Todd Nicks, Germantown, Tennessee, for the employer-appellee, Boshwit Brothers, Inc.

1

## Factual and Procedural Background

Rigoberto Morales ("Employee"), a thirty-four-year-old resident of Shelby County, Tennessee, sustained gunshot wounds to his legs on July 22, 2016, while performing his work duties as a groundskeeper for Boshwit Brothers, Inc. ("Employer"). The facts surrounding the incident are generally undisputed. Employee worked as a groundskeeper at an apartment "community" owned by Employer.[1] Employee also lived in one of the apartment buildings, although his rent was not a part of his compensation. On the day of the incident, he was mowing an area of grass near a public road when he was approached from behind by an unknown individual who had a gun. The individual grabbed Employee, forced him into a nearby area of trees, and, when Employee attempted to flee, fired three shots, striking Employee twice. Employee denied knowing the assailant and denied having seen him since that time. The perpetrator was not apprehended, and there was no apparent motive for the shooting.

Employee was transported by ambulance to a hospital where surgery was performed to treat broken bones and other injuries caused by the gunshots. Employee remained hospitalized for four days due to a fractured right tibia and right fibula. He testified he still experiences symptoms and limitations related to his injuries, and he has not returned to work.

At an expedited hearing, Employee testified that the area surrounding the apartment community is a high crime area. He described seeing police cars on a frequent basis and hearing gunshots. The property manager testified that no crimes on the property had been reported to her since she began working for Employer in December 2015.

As a groundskeeper, Employee testified that one of his duties was to keep the grass mowed, and that it was within his discretion as to which area of the grass needed mowing on any given day. The area he was mowing on the day he was assaulted and shot was beside a public road bordering Employer's property line. At the expedited hearing, Employee argued that because the requirements of his employment placed him in close proximity to a public road and required him to operate noisy equipment, he was placed at an increased risk of assault and should receive workers' compensation benefits pursuant to Tennessee's street risk doctrine. Employer argued that the street risk doctrine is inapplicable under the circumstances of this case and that the workers' compensation law cannot be interpreted in a remedial manner to favor Employee.

---

[1] Employer's property manager distinguished an apartment "community" from an apartment "complex" by explaining that the apartment community occupies approximately two city blocks that are not enclosed or gated.

The trial court concluded Employee failed to present sufficient evidence to establish he will likely prevail at a hearing on the merits in proving that his injury arose out of the employment. Specifically, the trial court reasoned as follows:

> In this case, the Court finds [Employee] was the victim of an entirely random assault, neutral as to his employment. Further, the Court finds the street risk doctrine does not apply. [Employer] did not openly solicit the general public to visit its apartment complex as a part of its business and there is no proof the general public visited this particular complex more frequently than any other neighborhood. The assailant did not single out [Employee] for assault because of his employment nor was [Employee] indiscriminately exposed to dangers of the public by his employment.

In reaching this conclusion, the trial court observed that, because Employee lived in the apartment community where he worked, he could just as easily been assaulted while going about his personal business. Moreover, the trial court reasoned that, because Employer's business is "providing a residential community," any invitation to the public to visit its premises is "collateral during the limited circumstances of rental inquiries and leasing activities." Employee has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision may be reversed or modified if the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)    Violate constitutional or statutory provisions;
(B)    Exceed the statutory authority of the workers' compensation judge;
(C)    Do not comply with lawful procedure;
(D)    Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
(E)    Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015).

## Analysis

On appeal, Employee raises a single issue: whether the trial court erred in concluding that the street risk doctrine does not apply to the facts of this case. In support

3

of his position, Employee contends that his employment "exposed him to the dangers of the street" and that the conditions of his employment increased his risk of injury. We agree.

To provide guidance in determining the compensability of an assault that occurs while an employee is at work, the Tennessee Supreme Court developed a framework that categorizes assaults into one of three categories: "(1) assaults with an 'inherent connection' to employment such as disputes over performance, pay or termination; (2) assaults stemming from 'inherently private' disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment; and (3) assaults resulting from a 'neutral force' such as random assaults on employees by individuals outside the employment relationship." *Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d 768, 771 (Tenn. 1998). It is undisputed in this case that the assault upon Employee falls into the third category of "neutral assaults" and therefore "may or may not be compensable depending on the facts and circumstances of the employment." *Id.* We conclude the preponderance of the evidence at the expedited hearing supports a finding that Employee is likely to prevail at trial in showing his injuries arose primarily out of his employment pursuant to the street risk doctrine.

In *Hurst v. Labor Ready*, 197 S.W.3d 756 (Tenn. 2006), the Supreme Court addressed the application of the street risk doctrine in circumstances similar to those presented in this case. The employee in *Hurst* was killed by a gunman in a random assault while waiting outside his employer's office to be paid. *Id.* at 758. In discussing its prior adoption of the street risk doctrine, the Court explained "we approved the so-called 'street risk' doctrine that allows an employee to prove causation where the employment 'exposes an employee to the hazards of the street.'" *Id.* at 761 (quoting *Braden v. Sears, Roebuck and Co.*, 833 S.W.2d 496, 499 (Tenn. 1992)). The Court then noted that the evidence showed the employee was targeted, at least in part, because he was outside his employer's office when the shooting occurred. *Id.*

Similarly, in *Mattress Firm, Inc. v. Mudryk*, No. W2014-01017-SC-R3-WC, 2015 Tenn. LEXIS 689 (Tenn. Workers' Comp. Panel Aug. 24, 2015), the Supreme Court's Special Workers' Compensation Appeals Panel applied the street risk doctrine in circumstances where employees were "indiscriminately exposed to the public in the course of their duties." *Id.* at *22. The employee in *Mudryk* worked as a store manager at one of the employer's retail locations. *Id.* at *2. While performing her work duties, she became aware of an attempted robbery and was injured during an ensuing altercation. *Id.* at *3-4. In affirming the trial court's application of the street risk doctrine, the Panel relied upon a prior case in which there was "indiscriminate exposure to the general public" as a condition under which the employee's work was required to be performed, leading to the Supreme Court's conclusion that "the actions of persons on those premises can be considered a hazard of employment." *Id.* at *20-21 (quoting *Beck v. State*, 779 S.W.2d 367, 371 (Tenn. 1989)).

4

Like the employees in *Hurst* and *Mudryk*, Employee in the present case had job duties that exposed him to the general public. His duties included picking up trash, moving furniture to dumpsters, and mowing lawns. The property manager testified that Employee's job was classified as a groundskeeper and that he had no access to anyone's private residence. She clarified that he was "strictly all grounds." With respect to his mowing duties, Employee was to mow "whatever needed to be cut." The property manager also admitted on cross examination that "anyone can drive in and out in any of these roads that either cross through these properties . . . or around these properties." Moreover, this unfettered public access included the streets "around the area where [Employee] was shot."

In denying Employee's claim, the trial court in the present case relied on *Padilla v. Twin City Fire Ins. Co.*, 324 S.W.3d 507 (Tenn. 2010). In that case, the employee was found murdered near the back door of the employer's premises. The employee had been shot in a pre-dawn attack, and no motive was ever revealed. The Supreme Court concluded that the circumstances of the case did not fall within the street risk doctrine. Specifically, the Court observed that, while the employer's premises were located in a high crime neighborhood, "[the employer] was not frequented by the public nor did it advertise or attract the public." *Id.* at 513. Moreover, because the business was not one frequented by the public, the Court found that "when [the employee] was at the shop, he was as removed from the public as he could possibly be. The business was not open to the public. [The employee's] duties did not require him to deal with the public. Members of the public were rarely in the shop." *Id.* The Supreme Court agreed with the trial court's conclusion that "the conditions of [the employee's] employment at [the employer] did not indiscriminately expose him to dangers of the public, including the danger of crime in the neighborhood." *Id.*

The facts of the case before us are readily distinguishable from those in *Padilla*. Rather than being at the back door of a business not generally accessible to the public, Employee was engaged in his regular work duties beside a public road on property to which the general public had unfettered access. Furthermore, we disagree with the trial court's conclusion that Employee was no more vulnerable than any other member of the general public. The unrefuted evidence shows that Employee's operation of a lawnmower, at the behest of Employer, required his attention to be focused on the terrain directly in front of him, hampered his senses, and impaired his ability to remain alert to his general surroundings, making him more vulnerable to a random assault such as occurred in this case.[2]

---

[2] In his dissent, our colleague emphasizes what he views as a dearth of evidence supporting our conclusion that the operation of the lawnmower increased Employee's risk of injury. Yet, in addition to Employee's testimony as quoted in the dissent, he also testified, "[t]he lawnmower – the machine was on. I was wearing glasses for the sun. And I was mowing the lawn as I always did." During cross-examination, Employee agreed he had been mowing about one hour when the incident occurred. With respect to the assailant's approach, Employee testified, "I didn't know where he was coming from. He

We also disagree with the trial court's conclusion that Employer did not invite the general public onto its property except in a "collateral" way. There were banners placed near the property inviting passersby to inquire about renting an apartment. In fact, the property manager testified "we're trying to draw them in to where we are." Moreover, any number of delivery persons, utility service workers, and individuals visiting residents for personal or business reasons could be on the property at any given time. The apartment community was not gated and there was no fence around the perimeter. The public was, in fact, invited onto the property for a variety of reasons and, more importantly, had unrestricted access to the common areas of the property, creating "risks of the street" in and around Employer's property. In our view, this is precisely the kind of case in which the street risk doctrine was meant to be applied. Therefore, we reverse the trial court's finding that Employee did not present sufficient evidence to establish he will likely prevail at a hearing on the merits in showing that his injuries arose primarily out of his employment.[3]

Finally, we note Employer's argument that Tennessee's workers' compensation law can no longer be interpreted in a remedial or liberal fashion in favor of an injured worker. *See* Tenn. Code Ann. § 50-6-116 (2015). While we agree with Employer's statement in the abstract, we do not believe that the street risk doctrine conflicts with a court's obligation to construe the law "fairly, impartially, and in accordance with basic principles of statutory construction." *Id.* The Tennessee Supreme Court's adoption of the street risk doctrine was not preconditioned on a liberal or remedial interpretation of the statute and can be applied in an even-handed manner consistent with the legislature's mandate.

**Conclusion**

For the foregoing reasons, we hold that the evidence preponderates against the trial court's decision at this interlocutory stage of the case. Accordingly, the trial court's decision is reversed, and the case is remanded to the trial court for a determination of the extent of benefits, if any, to which Employee may be entitled.

---

grabbed me . . . and turned me around . . . with force." Moreover, Employer's property manager offered nothing to rebut any of this testimony. In fact, she agreed with Employee's counsel that "his job specifically puts him on the street right there."

[3] At the expedited hearing, Employer did not dispute that Employee's injuries occurred in the course of his employment. Thus, we need not address that element.



FILED

March 22, 2017

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 12:50 P.M.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Rigoberto Morales | ) | Docket No.   2016-08-0876 |
| | ) | |
| v. | ) | State File No. 58695-2016 |
| | ) | |
| Boshwit Brothers, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Allen Phillips, Judge | ) | |

_____

**Dissenting Opinion - Filed March 22, 2017**

_____


Hensley, J. dissenting.

I respectfully dissent and would affirm the trial court's denial of benefits.  In my view, the trial court correctly found that the evidence presented at the motion hearing was insufficient to determine that Employee would likely prevail at a hearing on the merits. The issue before the trial court was whether Employee presented sufficient evidence from which the trial court could determine he would likely prevail at trial in establishing his injuries "arose primarily out of" the employment, thereby entitling Employee to an award of medical benefits.[1]  Like the majority opinion, the focus of the parties' arguments and the trial court's decision was the application of the "street-risk" rule.  The trial court determined the rule did not operate to render the claim compensable and denied benefits, concluding it "cannot extend coverage under these circumstances as such would cause [Employer] to become an insurer against every accidental injury . . . occurring during employment."  In my opinion, the preponderance of the evidence does not overcome the statutory presumption that the trial court's findings and conclusions are correct.  *See* Tenn. Code Ann. § 50-6-239(c)(7) (2016).  Accordingly, I would affirm the denial of medical benefits based on the evidence thus far presented.

The street-risk rule was expressly adopted in Tennessee in *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597 (Tenn. 1979).  Observing that "the standards

---

[1] Although Employee's petition for benefit determination requested both medical and temporary disability benefits, his attorney announced at the motion hearing that "to the extent . . . we're seeking [temporary disability benefits], we would reserve that for a full hearing later, should that be necessary."

employed by this Court in deciding whether accidents arise out of employment have led to diverse results," the *Hudson* Court determined that the "correct resolution" of the case "involve[d] a consideration of the risks and dangers inherent in a truck driver's employment, rather than the objective of the assailants." *Id.* at 602. Noting that "[n]o one can quarrel with the conclusion that a truck driver for a motor freight carrier is exposed to the hazards of the streets and highways to a substantially greater extent than is common to the public," the Court stated that this exposure "is the basis for the street-risk rule, which simply stated, is that the risks of the street are the risks of the employment, if the employment requires the employee's use of the street." *Id.*

In *Hudson*, the Court also noted it did not "think that knowledge of the motivation behind the senseless attack upon [the employee] or whether the object was personal theft or employer theft provide[d] the proper basis upon which to determine compensability." *Id.* at 603. Nonetheless, the Court stated that if the motivation behind the attack "is conceived to be essential to justify an award . . ., we believe there was sufficient nexus between the assault and [the employee's] employment," noting

> [i]t is beyond question that the one thing that distinguished [the employee] from other members of the general public that were in and around the [location] was the fact that he was the driver of [the employer's] tractor-trailer that had a CB antenna, and presented the potentiality, to the assailants, of worthwhile loot for theft of the vehicle which was the responsibility of [the employee].

*Id.* The Court determined that the circumstances "provide[d] a rational connection with the employment" that was analogous to prior Tennessee cases allowing a recovery and distinguishable from those cases where "there was nothing to identify the employee with his employment, at the time and place of the assault." *Id.*

Addressing another assault case several years later, the Tennessee Supreme Court observed that the "correct focus in assault cases involves a consideration of the risks and dangers inherent in the employment," stating "[a]n employee need only show that an assault has a rational, causal connection to the employment in order to establish the injury arose out of the employment." *Braden v. Sears, Roebuck & Co.*, 83 S.W.2d 496, 499 (Tenn. 1992). The Court further stated:

> To establish this causal connection, workers whose employment exposes them to the hazards of the street, *or* who are assaulted under circumstances that fairly suggest they were singled out for attack because of their association with their employer, are entitled to establish this causal connection with the aid of the street risk doctrine.

*Id.* (emphasis added).

2

Subsequently, the Tennessee Supreme Court determined that, for purposes of analyzing whether assaults upon employees "arise out of" the employment for workers' compensation purposes, assaults can best be divided into three categories of cases: (1) those involving an "inherent connection" to employment such as "disputes over performance, pay or termination"; (2) those stemming from "inherently private" disputes imported into the employment setting from the employee's private life and not exacerbated by the employment; and (3) those resulting from "a 'neutral force' such as random assaults on employees by individuals outside the employment relationship." *Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d 768, 771 (Tenn. 1998). The *Woods* Court noted that assaults with an "inherent connection" to the employment are compensable; those stemming from an "inherently private" dispute imported into the employment setting from an employee's private life and not exacerbated by the employment are not compensable; and those resulting from a "neutral force" may or may not be compensable, depending on the facts and circumstances of the employment. *Id.*

I agree with the determinations of the trial court and the majority that, based on the evidence presented in the motion hearing, the assault in this case is best described as resulting from a "neutral force." A "neutral force" assault is one that is neither personal to the employee nor distinctly associated with the employment. *See, e.g.*, *Wait v. Travelers Indem. Co.*, 240 S.W.3d 220 (Tenn. 2007). Here, there was no evidence that the person who committed the assault was part of the working or employment relationship or was on Employer's premises on any business related to Employer or Employee. Employee acknowledged that after his assailant dragged him to the woods and knocked him down, the assailant said he "was looking for someone." However, his testimony that he did not know his assailant and had never seen him before or after the assault was unrefuted. Thus, it is necessary to examine the facts and circumstances of the employment and its relationship to the assault to analyze whether Employee presented sufficient evidence at the motion hearing for the trial court to determine he would likely prevail at trial in establishing his injuries "arose primarily out of the employment."[2]

The phrase "arising out of" refers "to the cause or origin of the injury," *Padilla v. Twin City Fire Ins. Co.*, 324 S.W.3d 507, 511 (Tenn. 2010), and it requires that a causal connection exist between the employment conditions and the resulting injury. *Travelers*

---

[2] The parties' arguments, the trial court's decision, and the majority opinion are based on analyses of the street-risk rule, but none of these analyses address whether the 2013 Workers' Compensation Reform Act requires a different analysis of the street-risk rule. Specifically, the definitions of "injury" and "personal injury" were altered in the 2013 Reform Act to include the requirement that an injury arise "primarily" out of the employment to be compensable. *See* Tenn. Code Ann. § 50-6-102(14) (2016). Because the parties did not raise this issue before the trial court and because, in my view, the evidence does not preponderate against the trial court's determination that employee would not likely prevail at a hearing on the merits, I find it unnecessary in this dissent to consider the effect, if any, these definitions in the Reform Act had on the application of the street-risk rule.

3

*Ins. Co. v. Googe*, 397 S.W.2d 368, 370 (Tenn. 1965). As the Tennessee Supreme Court has observed,

> [t]he mere presence of the employee at the place of injury because of the employment is not enough [to render the claim compensable], as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work. Thus, an injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered as arising out of the employment.

*Blankenship v. Am. Ordnance Sys., LLC*, 164 S.W.3d 350, 354 (Tenn. 2005) (citations omitted). In adopting the street-risk rule in *Hudson*, the Court recognized that certain types of employment place an employee in the path of risks that, while borne by the general public, are increased as a result of the employment. Thus, those risks then become a hazard or danger of the employment not because the risk itself is related to the employment, but because the employment renders the employee particularly vulnerable to the risk.

The majority opinion concludes that Employee was made particularly vulnerable to this assault because of his employment, bringing this injury within the scope of the street-risk rule and rendering the claim compensable. I disagree. In my view, the evidence failed to establish that Employee's work placed him in greater risk than any other member of the public or that his employment played a role in causing his injuries. He was mowing in an open area of the apartment community in close proximity to a public street where, although the public was not prohibited, Employer conducted no business. The nature of Employer's business was not to serve the general public as in a retail establishment, but to provide and maintain housing for such persons as entered into a rental agreement with Employer.

There was no evidence presented to suggest that Employee was robbed or that any attempt was made to rob Employee. Other than the possibility of mistaken identity, the evidence suggests the unprovoked attack was a purely random event without any known motive. It simply had no rational connection with the employment. There is no evidence in the record to suggest Employee was attacked because of his affiliation with Employer. In fact, there was no evidence to indicate Employee worked for Employer beyond the fact that he was mowing grass on premises owned by Employer. Although one could surmise he was "on the job" for some employer because he was mowing the grass in the apartment community, nothing identified him as an employee of the apartment community. He could just as easily have been working for a landscaping company or have been an independent contractor. In short, nothing surrounding the circumstances of the attack suggested the attack was in any way connected with the employment relationship. Thus, to establish a causal connection to his employment, Employee was required to present evidence from which the trial court could determine he

4

would likely prevail at trial in establishing that his employment exposed him to the hazards of the street. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2016); *Braden*, 833 S.W.2d at 499.

In determining that the street-risk rule applies in this case, my colleagues rely, at least in part, on the fact that Employee was operating a lawnmower at the time of the attack, suggesting that his senses were impaired, thereby increasing his vulnerability. As stated in the majority opinion, "[t]he unrefuted evidence shows that Employee's operation of a lawnmower, at the behest of Employer, required his attention to be focused on the terrain directly in front of him, hampered his senses, and impaired his ability to remain alert to his general surroundings, making him more vulnerable to a random assault such as occurred in this case." I disagree that the "unrefuted evidence" was as stated by the majority, and I disagree with the conclusion the majority reaches from the evidence on this issue, which was essentially limited to two responses of Employee to questions presented to him:

Q. Could you hear him coming?
A. No.
Q. Why not?
A. Because the lawnmower was on and it was making a lot of noise.

There was no evidence to suggest that, had the mower not been running, Employee would have perceived the danger of an approaching assailant or would have been able to avoid the assault. There was no evidence that the noise of the lawnmower "impaired his ability to remain alert to his general surroundings" as the majority concluded. There was no evidence suggesting where the assailant came from, and there was no evidence excluding the attacker as being a resident in the apartment community. Employee testified the attacker grabbed him by his T-shirt and "turned [him] around." He testified he "didn't know where [the attacker] was coming from." There was no evidence beyond testimony concerning Employee's proximity to the public street and the noise from the lawnmower to suggest that Employee's work played any part in the assault or exposed him to the hazards of the street. Moreover, there was no evidence that Employee would have been able to reach safety or otherwise avoid the attack had he recognized the danger. In my opinion, the trial judge correctly determined that the evidence at this stage of the proceedings was insufficient to bring this random assault within the scope of workers' compensation coverage.

The majority discusses two opinions that my colleagues say applied the street-risk rule "in similar circumstances." In my opinion, each is factually distinguishable from the instant case. In *Hurst v. Labor Ready*, 197 S.W.3d 756 (Tenn. 2006), the employee was killed under circumstances that, unlike the instant case, clearly related to his employment, as recognized by both the trial court and the Supreme Court:

5

As the trial court found, the shooting was related to Hurst's employment; indeed, he was outside Labor Ready's office waiting to get paid in accordance with Labor Ready's payment procedure when the shooting occurred. There is no evidence that Hurst was simply loitering or that the incident was unrelated to his employment. Similarly, the evidence shows that the altercation did not stem from an "inherently private" dispute; to the contrary, after carefully weighing the credibility of the witnesses, the trial court found that Hurst did not make any inciting comments or take any actions that provoked the shooting. *Finally, the trial court, citing the "street-risk" doctrine, found that the shooting "stemmed from" Labor Ready's enforcement of its restroom policy and Hurst's association with Labor Ready. Although Hurst was not wearing a uniform or clothing identifying him as a Labor Ready worker, the evidence supports the trial court's finding that Hurst was identifiable as a Labor Ready employee because he was standing directly in front of Labor Ready's office with other Labor Ready workers while waiting to be paid.*

*Id.* at 761-62 (emphasis added).

In *Mattress Firm, Inc. v. Mudryk*, No. W2014-01017-SC-R3-WC, 2015 Tenn. LEXIS 689 (Tenn. Workers' Comp. Panel Aug. 24, 2015), the employee, who was the manager on duty at the employer's retail store, sustained injuries in an encounter when she pursued two persons posing as customers who came into the store and stole the employee's purse from under a desk at the front of the store. The employer argued the trial court erred in applying the street-risk rule because the employee was not "indiscriminately exposed to the general public." However, the Panel agreed that the street-risk rule was correctly applied to the facts and circumstances of that case.

It is undisputed that Employer's Perimeter Mall store was a retail establishment, open to anyone who chose to walk through its doors. It is likewise undisputed that Employee's job duties included greeting and assisting any person who came into the store and presented as a customer. We agree with the trial court that this constitutes "indiscriminate exposure to the general public" as described in [*Wait v. Travelers Indem. Co. of Illinois*, 240 S.W.3d 220 (Tenn. 2007)].

Additionally, the facts in this case are analogous to those in *Beck v. State*, 779 S.W.2d 367 (Tenn. 1989). In *Beck*, the Court affirmed an award of workers' compensation benefits to a driver's license examiner who was sexually assaulted at her place of employment and suffered mental injuries. The Court reasoned that the "assailant had access to Plaintiff because her workplace was open to the public. . . . [Her] indiscriminate exposure to the general public was one of the conditions under which her work was

6

required to be performed, and the actions of persons on those premises can be considered a hazard of the employment."

*Id*. at \*20-21 (citations omitted).

Here, unlike in *Hurst*, the assault on Employee had nothing to do with Employer's policies, nor was there anything to identify Employee with Employer or any other employment relationship beyond the fact that he was mowing grass. And in contrast to the employee in *Mudryk*, Employee's job duties did not present indiscriminate exposure to the general public. His job duties did not involve meeting or greeting the public as was the case with the store manager in *Mudryk*.

In my view, based on the limited evidence admitted at the motion hearing and the statutory presumption that the "findings and conclusions of the workers' compensation judge are correct," *see* Tennessee Code Annotated section 50-6-239(c)(7), I agree with the trial court's determination that the attack and Employee's injuries were "purely coincidental, or contemporaneous, or collateral, with the employment," and that Employee's "mere presence . . . at the place of injury because of the employment" is insufficient to establish that Employee would likely prevail at a hearing on the merits. On that basis, I would affirm the trial court's denial of benefits.



**FILED**

**March 22, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 12:50 P.M.**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Rigoberto Morales | ) | Docket No.   2016-08-0876 |
| | ) | |
| v. | ) | State File No.  58695-2014 |
| | ) | |
| Boshwit Brothers, Inc., et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 22nd day of March, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **Bryce W. Ashby** | | | | | X | bryce@donatilaw.com |
| **Paul Nicks** | | | | | X | pnicks@travelers.com |
| **Allen Phillips, Judge** | | | | | X | Via Electronic Mail |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov